Douglas R. Luther (SBN 280550)
doug@lutherfirm.com
Beverly Bradshaw (SBN 266663)
beverly@lutherfirm.com
LUTHER FIRM, PC
4685 MacArthur Court, Suite 440
Newport Beach, California 92660
Telephone: (949) 649-4241

Attorneys for Plaintiff
ARGUS CAPITAL MANAGEMENT LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| ARGUS CAPITAL MANAGEMENT LLC, a California limited liability company;<br><br>                  Plaintiff,<br><br>        v.<br><br>THE GROUNDS GUYS SPV, LLC, a Delaware corporation; RUSS MEIER, an individual; and DOES 1-100;<br><br>                  Defendants. | Case No. 1:23-cv-00043-JLT-BAM<br>Judge: Hon. Jennifer L. Thurston<br><br>**FIRST AMENDED COMPLAINT**<br><br>(1) **Fraudulent Misrepresentation**<br>(2) **Negligent Misrepresentation**<br>(3) **Fraudulent Inducement**<br>(4) **Fraudulent Nondisclosure**<br>(5) **Violation of the Texas Deceptive Trade Practices Act**<br><br>Complaint Filed:<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Argus Capital Management LLC ("Argus") hereby alleges and complains as follows:

## INTRODUCTION

1.     Defendant The Grounds Guys SPV, LLC ("The Grounds Guys") sold franchises in California by concealing that prior franchises had failed (the business model did not work) and by providing fraudulent inflated projections on revenue and profits.

2.     The Grounds Guys offers franchises in full-service lawn care and landscape solutions.  Russ Meier ("Meier") and John Dobelbower ("Dobelbower") are representatives of The Grounds Guys and were the main persons of contact during Peterson's dealings with The Grounds Guys.

3.     Argus is a California limited liability company owned and operated by Jason Peterson ("Peterson"), a former officer of the United States Air Force with a Bachelor of Science degree in Civil Engineering and a Master of Science degree in Environmental Engineering.  Peterson worked for General Electric and Kaiser Permanente before purchasing The Grounds Guys franchise.  The Grounds Guys franchise is Peterson's first attempt at starting and running a small business franchise.

4.     In September 2021, Peterson began working with Defendants, to establish a franchise outlet in Central California. Over the course of several weeks, Defendants provided Peterson with information and statements regarding The Grounds Guys and its business and financials, which were material in Peterson's decision to go forward with signing a Franchise Agreement with Defendants ("Franchise Agreement").

5.     At no point in time did Defendants disclose that they had a prior history in California, that the prior California franchisees had been unsuccessful, and that its system was ultimately not a viable business model in California.

Defendants concealed this information throughout the due diligence process despite it being clearly material to the decision to invest in the franchise by Peterson.

6.    Defendants had the opportunity to disclose their prior history in California on several occasions. During numerous conversations with The Grounds Guys' representatives, Peterson was told that another franchisee who had joined a few months prior was the first California franchisee, which was not accurate.

7.    Beyond concealing the past history of failed franchises, Defendants went even further in their deception.  Defendants provided a pro forma financial statement to Peterson so that he could meet the lending criteria necessary to obtain loans necessary to pay royalty and marketing fees as required by the Franchise Agreement.  The pro forma contained vastly inflated revenue figures, approximately two times higher than the actual revenue that was to be expected.

8.    For these reasons, set forth in more detail below, Peterson seeks a return of the money he has invested in the franchise, approximately $150,000 as well as attorneys' fees.

## THE PARTIES

9.    Argus is a California limited liability company with its principal place of business located at 14568 Knox Lane, Prather, California 93651.

10.    Defendant The Grounds Guys SPV LLC is a Delaware limited liability company with its principal place of business located at 1010 North University Parks Drive, Waco, Texas 76707.

11.    On information and belief, Defendant Meier is a citizen and domiciled in or around the Waco, Texas area and is a Director of Franchise Development for The Grounds Guys.

12.    Plaintiff is unaware of the true names and capacities of Defendants named Does 1 through 100 and therefore sue these Defendants by fictitious names. Each of the Doe Defendants is and was responsible or liable in whole or in part for the acts and omissions alleged in this Complaint.

PLAINTIFF'S FIRST AMENDED COMPLAINT

1

## JURISDICTION

2    13.   This Court has jurisdiction over the subject matter and parties

3  pursuant to 28 U.S.C.§ 1332, as the matter in controversy exceeds the sum or value

4  of $75,000, exclusive of interest and costs, and is between citizens of different

5  states.

6    14.   Jurisdiction over Defendants is proper because Defendants had

7  sufficient continuous and systematic minimum contacts with California such that

8  they foresaw the possibility of being sued in this state, including but not limited to,

9  conducting significant business activities in this state, selling franchises in this

10  state, collecting royalties in this state and engaging in the conduct which is the

11  subject matter of this dispute.

12    15.   Pursuant to the Addendum to the Franchise Agreement for Residents

13  of California, The Ground Guys agreed that "the offer or sale of the franchise to

14  Franchisee was made in the State of California."  A true and correct copy of the

15  California Addendum is included as Exhibit A.

16    16.   California Business and Professions Code Section 20040.5 states that

17  "[a] provision in a franchise agreement restricting venue to a forum outside this

18  state is void with respect to any claim arising under or relating to a franchise

19  agreement involving a franchise business operating within this state."  In the

20  California Addendum, The Grounds Guys agreed that to the extent the Franchise

21  Agreement contained any provision that is inconsistent with California Business

22  and Professions Code Sections 20000 through 20043, the California Franchise

23  Relations Act, the law would control.  Thus, by agreeing to the California

24  Addendum, the Parties modified the Franchise Agreement to provide for California

25  as a forum.

26    17.   Venue is proper in, and Defendants are subject to the personal

27  jurisdiction of, this Court because Defendants maintain a franchise in this District,

28

1   and all or most of the events giving rise to this action occurred in this District. 28

2   U.S.C. § 1391(b).

3   **FACTUAL BACKGROUND**

4   **A.    The Grounds Guys Concealed Its Prior History of Failed Franchises in**

5   **California**

6   18.    The Grounds Guys 2012 franchise disclosure document ("FDD")

7   shows that its first California outlet opened in 2011.  A second California franchise

8   opened in 2013, according to the 2014 FDD.  According to the 2015 FDD, a third

9   California franchise followed in 2014.  These franchises were in different locations

10  throughout California, identified as Berkeley, Chula Vista, Rohnert Park and San

11  Marcos.  They were owned by different operators.  They all shut down in 2017.

12  19.    The 2021 FDD only identified the number of franchises in each state

13  for 2018-2020.  Despite having 183 franchises at the end of 2020, there were no

14  California franchises.  Thus, Peterson, who received the 2021 FDD, was not aware

15  of The Grounds Guy's prior history in California.

16  20.    Defendants, including its development and executive team, however,

17  were aware that California was not a viable market for its franchises.  Defendants

18  concealed this past history so that Peterson would purchase The Grounds Guys

19  franchise.

20  21.    Defendants waited 3 years for the California terminations to come out

21  of the FDD so that prospects, including Peterson, would be unaware that California

22  franchises had existed and failed in the past.  There was nothing in the FDD to alert

23  Peterson to the fact that 3 California franchise owners had terminated their

24  franchises in 2017.

25  22.    Defendants had opportunity to disclose their prior history in California

26  on several occasions but chose to instead provide repeated misrepresentations.  In

27  or around September 27, 2021, Defendants, in an effort to close the deal on the sale

28  of a franchise to Peterson, flew Peterson out to Orlando, Fl to attend the annual

reunion of The Grounds Guys' parent company, Neighborly Assetco LLC.  During this annual reunion, Defendant Meier told Peterson that Dean Mellos would be the first California franchisee.  This falsity was repeated to Peterson again by another Grounds Guys representative, Brittany Krueger—who, during Peterson's onboarding, connected Peterson with Dean Mellos and stated that Mr. Mellos was the first California franchisee.

23.    Had Defendants told the truth they would have stated that there were 3 previous franchisees who had all tried to operate a franchise in California and who all had closed after a couple years in operation.  Peterson would have learned that California was not a viable market for The Grounds Guys System.  The fact that prior California franchisees had failed would have stopped Peterson from proceeding with his purchase of the franchise and prevented Peterson's loss of time and income.

24.    The Grounds Guys business model focuses on reoccurring revenue by providing lawn maintenance, mowing, blowing and trimming services.  While this may work in some other parts of the country, the prior California franchisees had shown that this model or system was not economically viable in California.  In particular, the cost structure of The Grounds Guys franchises made it prohibitive to compete with local competition in the marketplace.  The Grounds Guys pricing was often a multiple of 2 or 3 times the local competitors.  Rather than disclose to Peterson the difficulties they had faced with the business model, Defendants concealed this information before Peterson signed his Franchise Agreement.

25.    From Defendants' perspective, by concealing that information, they could have a second attempt to enter the California market.  And if these new franchisees, including Plaintiff failed, then it was no big loss to them.  The Grounds Guys had received initial franchise fees and royalties along the way.  It put all the risk on Plaintiff who unlike Defendants was unaware of the prior history of The Grounds Guys in California.  Defendants willfully and consciously disregarded the

welfare of Plaintiff by concealing the most material of information: that the franchise system had tried and failed in California.

**B.     The Grounds Guys Provide Fraudulent Financial Statement**

26.     Peterson was provided an FDD, which contained the financial performance of The Grounds Guys and its franchises.  A true and correct copy of the pertinent pages of the FDD is included as Exhibit B.

27.     Item 19 of the FDD contains the financial performance representation.  Table 1B in Item 19 identified 38 franchises that had been open for approximately 1 to 3 years.  Table 1B only includes numbers for franchises that had been open for the full 12 months of the Reporting Period.  The Reporting Period was defined as the calendar year 2020.  A franchise that had been operating from February through December 31, 2020, would not have been included in the table.  Thus, the table represents the performance of franchisees in the second and third year.  Table 1B states that the median annual gross sales for second and third year franchisees was $288,165.[1]

28.     Peterson needed to obtain a loan to pay for the initial operating expenses, including royalty and marketing fees.  To help secure a loan, Defendants directed Peterson to Edward Duncan, a financial consultant at First Financial ("Duncan") and requested Duncan to process a Small Business Association loan application for Peterson.  As part of the loan application process, Defendants directed Duncan to provide Peterson with a pro forma financial statement for The Grounds Guys operations.

29.     This pro forma financial statement provided at the direction of Defendants was used by Plaintiff to ultimately secure a loan to fund the initial operating expenses, including royalty and marketing fees due to The Grounds Guys.  The pro forma was provided to lenders to satisfy the lenders' due diligence.

---

[1] Table 1B provides that the average annual gross sales of the second and third year franchisees were $442,851.  The average was likely pulled up by a few high numbers such as the reported high of $1,814,146 (presumably a preexisting business who had bought into the franchise).

Without meeting the lenders' criteria, Plaintiff would likely have not qualified for a loan. Without this loan, he could not operate the franchise. A true and correct copy of the pro forma financial statement is included as Exhibit C.

30.     The pro forma financial statement included information that was not in the FDD provided to Peterson, including expected profits and inflated revenue numbers.

31.     The pro forma identified first year revenue of $348,350, about $60,185 higher than the median revenue for second- and third-year franchisees in The Grounds Guys system. On information and belief, the actual median first year performance of franchisees in The Grounds Guys system is substantially lower.

32.     The pro forma identified second year revenue of $618,000. This represents more than twice the median numbers reported in the FDD, which again were for second- and third-year franchisees.

33.     By including these numbers, the pro forma showed a combined profit and owner salary of $72,636 for the first year and $133,754 for the second year. And by including the inflated revenue numbers, the pro forma was able to show an ability to service the loan debt. Had the actual revenue numbers been used, this would have erased the profit and owner salary in both years. It would have showed an inability to service the debt.

34.     Defendants were well aware the numbers in that financial statement contained misleading information and inflated numbers. Duncan acted on Defendants' behalf and was someone unknown to Peterson before Defendants directed him to provide the fraudulent financial statement. The financial statement was provided at Defendants' behest knowing that it was being used by Plaintiff to evaluate the franchise and to qualify for loans. This induced Plaintiff to purchase the franchise.

35.     Defendants could have included the actual revenue numbers that were disclosed in the FDD and the actual costs set forth in Item 7 of the FDD. As is

industry standard, had it exported the actual data from the FDD into the pro forma, there would have been no issue.  They instead choose to provide inflated and inaccurate numbers.

**C.      Effect of the Representations**

36.     Defendants induced Peterson to acquire a franchise by concealing and misrepresenting the prior history of California franchises having shut down and by providing inflated and misleading financials.  But for these acts, Peterson would not have acquired the franchise, nor could he have obtained the requisite loan, which put him much more severely in debt.

37.     Peterson signed the Franchise Agreement on October 4, 2021, later assigning his rights to Plaintiff on December 20, 2021.

38.     Similar to the prior California franchises, after much trial and error, Plaintiff found that The Grounds Guys business model does not work in California and that they could not generate a profit.  Indeed, two other current franchisees in California have come to the same conclusion.

39.     Plaintiff was unable to reach even the median performance numbers that were disclosed in Item 19 of the FDD, and nowhere near the inflated numbers in the pro forma.  And he was unable to establish the reoccurring revenue through The Grounds Guys business model of lawn maintenance, mowing, blowing, trimming to allow him to pay back the loan.  But it was no surprise to Defendants, as they knew that this had previously occurred in California.

40.     Plaintiff has a right to attorney's fees, as provided for in Section 11.E of the Franchise Agreement, which states that the "prevailing party in any action or proceeding arising under, out of, in connection with, or in relation to this Agreement, the parties' relationship or the Business will be entitled to recover its reasonable attorneys' fees and costs ..."

1

2

**D.**     **The Franchise Agreement Contains Substantively Unconscionable**
          **Terms**

3      41.     The Franchise Agreement was a 90-page agreement that was one-sided

4  and provided on a take-it-or-leave-it basis.  It contains many substantively

5  unconscionable and unenforceable terms buried within including a pre-dispute

6  waiver of the right to jury, a waiver of the right to consequential or punitive

7  damages and a waiver of rights under the Texas Deceptive Trade Practices Act.

8      42.     This jury trial waiver is embedded in an arbitration clause which only

9  applies when the jury waiver or a class action waiver is held unenforceable.  In

10 other words, the Franchise Agreement specifies that if a court renders the jury trial

11 waiver unenforceable, the parties will have to go to arbitration and thus waive the

12 right to a jury.  Otherwise, the Franchise Agreement does not prescribe arbitration.

13 In tying arbitration to non-enforcement of the waiver, the unconscionable jury

14 waiver permeates the arbitration clause.   As the arbitration clause cannot be

15 separated from the pre-dispute waiver of the right to a jury trial it is unenforceable.

16     43.     The Franchise Agreement was non-negotiable and involved parties of

17 unequal bargaining power.  Peterson, was unrepresented by any attorney at the time

18 he entered into the Franchise Agreement (later assigning it to Plaintiff).

19     44.     The Franchise Agreement also contains a substantively

20 unconscionable mediation prerequisite.  The purpose of which is to deprive

21 California franchisees of the protection of California Business and Professions

22 Code Section 20040.5, which states that "[a] provision in a franchise agreement

23 restricting venue to a forum outside this state is void with respect to any claim

24 arising under or relating to a franchise agreement involving a franchise business

25 operating within this state."

26     45.     Section 11(A) of the Franchise Agreement requires that Plaintiff first

27 mediate before commencing any action in court.  However, it exempts The

28 Grounds Guys from that requirement as to almost any claim it could bring,

including any action for preliminary or permanent injunctive relief, or regarding the Grounds Guys trademarks or intellectual property and breaches of the following provisions Sections 3 (Trademark Standards and Requirements), 5.C (Authorized Services and Products), 5.E (Computer System; Call Center Program), 5.F. (Customer Information), 5.H (Confidential Information), 5.K (Participation in Internet Websites), 9.D (Noncompetition Covenants), 10.A (Transfers), or 13.A (Reversion of Rights; Discontinuation of Trademark Use).  It also provides The Grounds Guys a right to avoid mediation for any action for ejectment or possession of any interest in real or personal property.  And finally it exempts any claim for money owed to The Ground Guys under any agreement with them or their affiliates.  But contains no such exclusion for any money owed to Plaintiff by the Grounds Guys.

46.     The Mediation Provision lacks mutuality forcing Plaintiff to mediate before any possible claim it could bring but allowing for The Ground Guys to avoid mediation for almost any possible claim it would bring.  The underlying purpose is to prevent Plaintiff from filing first in California and instead to allow The Grounds Guys to file an action first in McLennan County, Texas.  This deprives Plaintiff of the protection of California Business and Professions Code Section 20040.5.

47.     This is not merely a hypothetical, it has already happened.   Plaintiff and two other franchisees, Mellos and Andrew Choi, who are bringing similar claims, jointly requested mediation in a July 14, 2022 letter.  The Grounds Guys refused to conduct any joint mediation with the parties to resolve the matter.

48.     After Andrew Choi conducted a mediation that was unsuccessful The Grounds Guys filed an action in McLennan County, Texas against both Choi and Mellos, who it had not mediated any action with.  The Grounds Guys argued that the exceptions allowed them to avoid mediation.  Rather than wait for The Grounds Guys to take advantage of the same exception here, and after The Grounds Guys

1  had already rejected a joint mediation and any possible informal resolution of the

2  matter, Plaintiff proceed to file this action.

3  **FIRST CLAIM FOR RELIEF**

4  (Fraudulent Misrepresentation)

5  (By Plaintiff against Defendants)

6      49.    Plaintiff repeats, realleges and incorporates by reference all

7  paragraphs of the Complaint as though fully set forth herein.

8      50.    Defendants misrepresented the revenue and profits made by

9  franchisees in The Grounds Guys system and misrepresented that Dean Mellos was

10  the first California franchisee.  These representations were false.

11      51.    Defendants made these representations knowing they were false.

12  Defendants knew that the actual revenue and profits amounts were substantially

13  lower than what was represented.  Defendants knew this because the actual

14  amounts, in large part, were set forth in the FDD.  Defendants also were aware that

15  there had been California franchisees prior to Dean Mellos.

16      52.    Defendants made these representations with a reckless disregard for

17  the truth or falsity intending that Plaintiff rely on them.

18      53.    Defendants made the false representations to Plaintiff intending that

19  Plaintiff rely on them when making his decision to sign the Franchise Agreement

20  and pay the initial franchises fees and ongoing royalties.

21      54.    Plaintiff justifiably relied upon these representations when he used

22  them to obtain a loan to obtain the franchise and then expended substantial sums of

23  money, time and effort into developing the franchise business.  Plaintiff would not

24  have taken these actions had he known the actual revenue and profit amounts or

25  had he known about the prior California franchisees.

26      55.    As a result of Defendants' false representations, Plaintiff has suffered

27  and will suffer damages in amounts to be proven at trial.

28

56.     As Defendants' conduct was malicious, fraudulent and oppressive and done with a conscious disregard of Plaintiff's rights, Plaintiff is entitled to exemplary or punitive damages in an amount to be decided at trial.

## SECOND CLAIM FOR RELIEF

(Negligent Misrepresentation)

(By Plaintiff against Defendants)

57.     Plaintiff repeats, realleges and incorporates by reference all paragraphs of the Complaint as though fully set forth herein.

58.     As alleged above, Defendants misrepresented the revenue and profits made by franchisees in The Grounds Guys system and misrepresented that Dean Mellos was the first California franchisee.  These representations were false.

59.     Defendants failed to exercise reasonable care in disseminating the false information.  Had they exercised reasonable care, Defendants would have known that the actual revenue and profits amounts were substantially lower than what was represented.  Defendants would have known this because the actual amounts, in large part, were set forth in the FDD.  Had they exercised reasonable care, Defendants could have reviewed their own documents or data systems to see that there were California franchisees before Dean Mellos.

60.     Defendants made the false representations to Plaintiff intending that Plaintiff rely on them when making his decision to sign the Franchise Agreement and pay the initial franchises fees and ongoing royalties.

61.     Plaintiff justifiably relied upon these representations when he used them to obtain a loan to obtain the franchise and then expended substantial sums of money, time and effort into developing the franchise business.  Plaintiff would not have taken these actions had he known the actual revenue and profit amounts.

62.     As a result of Defendants' false representations, Plaintiff has suffered and will suffer damages in amounts to be proven at trial.

63.     As Defendants' conduct was malicious, fraudulent and oppressive and done with a conscious disregard of Plaintiff's rights, Plaintiff is entitled to exemplary or punitive damages in an amount to be decided at trial.

### THIRD CLAIM FOR RELIEF

(Fraudulent Inducement)

(By Plaintiff against Defendants)

64.     Plaintiff repeats, realleges and incorporates by reference all paragraphs of the Complaint as though fully set forth herein.

65.     Defendants misrepresented the revenue and profits made by franchisees in The Grounds Guys system and misrepresented that Dean Mellos was the first California franchisee.  These representations were false.

66.     Defendants made these representations knowing they were false. Defendants knew that the actual revenue and profits amounts were substantially lower than what was represented.  Defendants knew this because the actual amounts, in large part, were set forth in the FDD.  Defendants also were aware that there had been California franchisees prior to Dean Mellos.  Defendants made these representations with a reckless disregard for the truth or falsity intending that Plaintiff rely on them.

67.     Defendants made the false representations to Plaintiff intending that Plaintiff rely on them when making his decision to sign the Franchise Agreement and pay the initial franchises fees and ongoing royalties.

68.     Plaintiff justifiably relied upon these representations when he used them to obtain a loan to obtain the franchise and then expended substantial sums of money, time and effort into developing the franchise business.  Plaintiff would not have taken these actions had he known the actual revenue and profit amounts.

69.     As a result of Defendants' false representations, Plaintiff has suffered and will suffer damages in amounts to be proven at trial.

70.    As Defendants' conduct was malicious, fraudulent and oppressive and done with a conscious disregard of Plaintiff's rights, Plaintiff is entitled to exemplary or punitive damages in an amount to be decided at trial.

### FOURTH CLAIM FOR RELIEF

(Fraudulent Nondisclosure)

(By Plaintiff against Defendants)

71.    Plaintiff repeats, realleges and incorporates by reference all paragraphs of the Complaint as though fully set forth herein.

72.    Defendants fraudulently failed to disclose material facts to Plaintiff regarding the viability of its business model in California.  Specifically, Defendants deliberately failed to disclose to Plaintiff that every California franchise had closed.

73.    Defendants had a duty to disclose this information regarding previous California franchises to Plaintiff because they made a partial disclosure that created a false impression, were the only party to the transaction aware of the information and because their voluntary disclosure of closures of California franchises from 2018 through 2020, identifying no closures, created a duty to disclose the whole truth, that there had been prior California franchises that had closed.

74.    Most importantly, Defendants represented to Plaintiff that Dean Mellos would be the first California franchisee.  That, however, was not accurate.  Once they made that disclosure they had an obligation to disclose the entire truth, that there had been prior California franchisees that had closed their operations.

75.    This nondisclosure was material in Plaintiff's decision to enter into the Franchise Agreement and expend substantial sums of money, time and effort into developing the franchise business.  Plaintiff would not have taken these actions had he known the truth that there were previous California franchises that failed.

76.    Defendants had many opportunities to disclose the facts regarding previous California franchises, but remained intentionally and deliberately silent on the matter.

77.   Defendants intentionally failed to disclose this material fact in an effort to, and with the intent to induce Plaintiff into signing the Franchise Agreement and provide the initial franchises fees.

78.   Plaintiff justifiably relied upon this nondisclosure when he entered into the Franchise Agreement.  Plaintiff's reliance resulted in an expenditure of substantial sums of money, time and effort into developing the franchise business.

79.   As a result of Defendants' nondisclosure, Plaintiff has suffered and will suffer damages in amounts to be proven at trial.

80.   As Defendants' conduct was malicious, fraudulent and oppressive and done with a conscious disregard of Plaintiff's rights, Plaintiff is entitled to exemplary or punitive damages in an amount to be decided at trial.

## FIFTH CLAIM FOR RELIEF

(Violation of Texas Deceptive Trade Practices Act)

(By Plaintiff against Defendants)

81.   Plaintiff repeats, realleges and incorporates by reference all paragraphs of the Complaint as though fully set forth herein.

82.   Plaintiff, as a franchisee, is a consumer as defined under the Texas' Deceptive Trade Practices Act ("DTPA").

83.   Under § 17.50 of the DTPA, a consumer has a private cause of action for "the use or employment by any person of a false, misleading, or deceptive act or practice that is ... specifically enumerated in Subsection (b) of Section 17.46 ... and relied on by a consumer to the consumer's detriment."   Section 17.46(b)(5) of the DTPA declares unlawful "representing that goods or services have ... benefits ... which they do not have." Tex. Bus. & Com. Code§ 17.46(b)(5).

84.   Plaintiff was provided a proforma spreadsheet that contained inflated financial figures inconsistent with the actual performance of franchisees in The Grounds Guys system.  In so doing, Defendants represented that the franchise had certain benefits which it in fact did not have.

85.     Section l7.46(b)(24) of the DTPA further declares unlawful "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." Tex. Bus. & Com. Code § l7.46(b)(24).

86.     The failure to disclose the prior closures of California franchisees is a false, misleading, or deceptive act or practice under the DTPA. Defendants made the omission in an effort to and with the intent to induce Plaintiff to purchase the franchise and sign the Franchise Agreement. Had Peterson known about the closures at the time of the of the transaction, he would not have signed the Franchise Agreement and bought a franchise.

87.     Section l7.46(b)(3) of the DTPA further declares unlawful "causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by another."

88.     Defendants misled Plaintiff into believing that the pro forma spreadsheet provided by Duncan contains the financial figures for The Grounds Guys franchise, numbers which were provided by The Grounds Guys.

89.     Section 17.50(a)(3) of the DTPA provides a private right of action for "any unconscionable action or course of action by any person."

90.     Defendants' actions of providing an inflated pro forma and failing to disclose prior closures of California franchisees in an attempt to induce Plaintiff into acquiring the franchise constitutes unconscionable conduct.

91.     Defendants made the false representations in an effort to, and with the intent to induce Plaintiff to obtain the loan to purchase the franchise and sign the Franchise Agreement.

92.     Plaintiff justifiably relied upon these representations when he entered into the Franchise Agreement and expended substantial sums of money, time and

effort into developing the franchise business.  Plaintiff would not have taken these actions had he known the truth.

93.    Defendants committed their actions knowingly.  Those actions caused Plaintiff to suffer the loss of a business and the threat of bankruptcy.  Those actions caused Peterson mental anguish resulting in a substantial disruption in life and a high degree of mental pain and distress.

94.    For these reasons, Plaintiff will be able to establish that the Defendants' actions were deceptive trade practices as a matter of law.  These violations would entitle Plaintiff to treble damages and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor:

1.    On the First Claim for Fraudulent Misrepresentation: for compensatory and punitive damages in amounts to be proven at trial;

2.    On the Second Claim for Negligent Misrepresentation: compensatory and punitive damages in amounts to be proven at trial;

3.    On the Third Claim for Fraudulent Inducement: for compensatory and punitive damages in amounts to be proven at trial;

4.    On the Fourth Claim for Fraudulent Nondisclosure: for compensatory damages and punitive damages in amounts to be proven at trial;

5.    On the Fifth Claim for Violation of the Deceptive Trade Practices Act: for compensatory and treble damages, damages for mental anguish and punitive damages in amounts to be proven at trial;

6.    For prejudgment interest at the highest rate permitted by law;

7.    For such other and further relief as the Court may deem just and proper.

1

2   DATED: March 27, 2023                **ARGUS CAPITAL MANAGMENT**

3

4                                        By:   */s/ Douglas R. Luther*
                                               Douglas R. Luther
5                                              Attorney for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S FIRST AMENDED COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial on any and all claims so triable.


DATED: March 27, 2023                    **ARGUS CAPITAL MANAGMENT**


By:  _/s/ Douglas R. Luther_
        Douglas R. Luther
        Attorney for Plaintiff