1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11

ARGUS CAPITAL MANAGEMENT
LLC, a California limited liability company

12

Plaintiff,

13

v.

14

15

THE GROUNDS GUYS SPV, LLC, a
Delaware corporation; RUSS MEIER, an
individual; and DOES -100

16

17

Defendants.

Case No. 1:23-cv-00043 JLT BAM

**ORDER DENYING DEFENDANTS'
MOTION TO COMPEL ARBITRATION**

(Docs. 17, 21, 24, 26)

18

19          The matter before the Court arises from the franchise agreement between Argus Capital

20   Management LLC and The Grounds Guys SPV LLC.  After Argus Capital filed a complaint in

21   this Court alleging fraud-based claims against The Grounds Guys.  The Grounds Guys filed two

22   motions: (1) a motion to dismiss under Federal Civil Procedure Rules 12(b)(1) and 12(b)(6) and

23   (2) a motion to compel arbitration.   The Court addresses the motion to compel arbitration (Doc.

24   17) in which the parties dispute the validity and enforceability of the franchise agreement's pre-

25   dispute jury waiver and arbitration provisions.  After reviewing the arguments, record, and cited

26   caselaw, the Court **DENIES** Defendants' motion to compel arbitration.

27   ///

28   ///

1

**PROCEDURAL BACKGROUND**

A.  **Concurrently Filed Motions**

On January 9, 2023, Argus Capital Management LLC (Argus Capital) initiated suit against The Grounds Guys SPV LLC (TGG) by filing a complaint (Doc. 1) in this Court alleging (1) Fraudulent Misrepresentation; (2) Negligent Misrepresentation; (3) Fraudulent Inducement; (4) Fraudulent Nondisclosure and (5) Violation of the Texas Deceptive Trade Practices Act.  On March 10, 2023, TGG filed motions to dismiss and compel arbitration (Docs. 6, 8), which this Court **denied as moot** following Argus Capital filing a first amended complaint (FAC) as of right pursuant to Federal Civil Procedure Rule 15(a)(1)(B).  (*See* Doc. 13.)  Argus Capital filed the FAC on March 27, 2023, naming TGG and Russ Meier, a TGG Director of Franchise Development, as defendants (collectively "Defendants").  (*See generally* Doc. 11.)   Plaintiff's FAC included additional facts and allegations but alleged the same fraud-based claims: (1) Fraudulent Misrepresentation; (2) Negligent Misrepresentation; (3) Fraudulent Inducement; (4) Fraudulent Nondisclosure and (5) Violation of the Texas Deceptive Trade Practices Act.  (*Id.*) In lieu of filing an answer, Defendants filed a pre-answer motion to dismiss (Doc. 15) and motion to compel arbitration (Doc. 20), tolling the time for Defendants to file an answer while the Court ponders the merits of the motions.  *See* Fed. Civ. P. 12(a)(4); (*See generally* Doc. 14, Stipulation Extending Time to Respond to First Amended Complaint.) Plaintiff addressed Defendants' motions separately and timely filed opposition(s) (Docs. 20, 21), and Defendants filed its responsive reply (Docs. 23, 24).  On May 25, 2023, Defendants filed objections and a request to strike the evidence submitted in support of Plaintiff's oppositions.  (*See generally* Doc. 26). Plaintiff filed objections to Defendants' reply evidence on May 31, 2023.  (Doc. 27.) The Court considers Defendants' motion to compel arbitration (Doc. 17) and responsive papers (Docs. 21, 24, 26, 27) below

B.  **The Court's Order to Show Cause**

On February 6, 2025, the Court issued an Order to Show Cause (Doc. 36) requiring the parties "engage in a substantive meet and confer process related to the issues raise in the motions and in the entire litigation as they relate to mediation, and to file a joint statement whether the

2

1    Plaintiff's willingness to mediate resolves the substantive issues raised in the motions." (Doc. 36

2    at 2.) The parties complied with the Cour's Order and timely filed a joint statement explaining

3    their positions. (*See* Doc. 37.) Plaintiff stated it filed suit in this Court to "preserve [its]

4    contractual and statutory right to file the action in California" following a failed attempt mediate

5    with Defendants. Plaintiff explained, before filing its complaint on January 9, 2023, Plaintiff

6    "attempted to set up a joint mediation" in July 2022. The proposed joint mediation would include

7    Plaintiff Argus and "two other California franchisee . . . [with] nearly identical claims against

8    TGG" (*see* Doc. 20 at 5) but Defendant TGG rejected the request and filed "a preemptive action

9    in McLennan County, Texas" against Dean Mellos and Mellos LLC, one of the California

10   franchisees, also represented by Argus's counsel. (Doc. 37 at 2.) Plaintiff further asserts that it

11   has offered to mediate "over the last two years," and the most recent attempt being at the Court

12   ordered meet and confer in which Plaintiff proffered "two alternative proposals:" (1) "[T]here be

13   no dismissal and … the parties stipulate to stay the action 60 days while undertaking a

14   mediation;" or (2) "Dismissal and the parties agree to undertake a mediation within 60 days, and

15   for any action between the parties filed after dismissal and up to the 30 days following the end of

16   mediation, TGG agrees to the Eastern District of California as the forum and a tolling agreement

17   that the statute of limitations is tolled starting when the present action was filed up through 30

18   days after mediation." (*Id.*) Defendants did not agree to either proposal which Plaintiff infers an

19   ulterior motive: "Ultimately [Defendants] wants a dismissal so it can turn around and file an

20   action in McLennan County, Texas. If TGG's request truly had to do with mediating the matter,

21   it would have agreed to a mediation without any preconditions at some point between July 14,

22   2022, and February 2025." (*Id.* at 3.)

23         Defendants provided its position as well stating, "Argus was contractually obligated

24   pursuant to the terms of its franchise agreement to mediate with TGG in McLennan County,

25   Texas prior to commencing an arbitration in McLennan County, Texas [;]" but Plaintiff "Argus

26   filed this lawsuit, instead of an arbitration, without first mediation with TGG." (*Id.* emphasis

27   included.) Defendants stated prior attempts to mediate were always rejected because Plaintiff

28   "has set forth preconditions . . . it has no right to demand under the franchise agreement" and the

1    pending motion to dismiss "is based in part on [Plaintiff's] failure to mediate prior to filing this

2    action, as well as a motion to compel arbitration in McLennan County, Texas pursuant to the

3    terms of the franchise agreement between [Plaintiff] and TGG." (*Id.*)  At the Court ordered meet

4    and confer, Defendants maintained its position stating, Plaintiff "continues to demand that any

5    mediation be subject to preconditions imposed by Argus." (*Id.* at 4.)   Defendants explained its

6    "unwilling[ness] to agree" to either of Plaintiff's alternative proposals.  In response to Plaintiff's

7    "proposed a mediation subject to its precondition that this matter be stayed, not dismissed,

8    pending the mediation," Defendants stated, "TGG is unwilling to agree to such a precondition as

9    it would further deprive TGG of its right under the franchise agreement that the mediation take

10   place prior to any active lawsuit and reward Argus for its noncompliance with the express terms

11   of the franchise agreement." (*Id.*)  Defendants "countered that it would agree to mediation" if

12   Plaintiff dismissed the pending lawsuit, but Plaintiff rejected the proposal.  As for Plaintiff's

13   second proposal, "a mediation with a dismissal of this action subject to tolling and TGG agreeing

14   that the United States District Court for the Eastern District of California is the proper forum,"

15   Defendants stated it "has no objection to mediation subject to tolling [;]" however, "it has a

16   pending motion to compel arbitration that explains in detail why the proper forum for this matter

17   is arbitration in McLennan County, Texas." (*Id.*)

18        The Court finds the parties sufficiently clarified their positions in the ongoing matter and

19   adequately explained why Plaintiff's willingness to mediate did not resolve substantive issues

20   raised in Defendants concurrently filed motions (Docs. 15, 17).  (*See generally* Doc. 37.)

21   Accordingly, the meet and confer requirement was satisfied.

## FACTUAL BACKGROUND

### A.  The TGG Franchise Agreement

24        Plaintiff Argus Capital is a California LLC with its principal place of business in Prather,

25   California.  (Doc. 11. at 2.)  Jason Peterson (Peterson) owns and operates Argus Capital.  (*Id.*)

26   Defendant TGG is a Delaware LLC "offer[ing] franchises in full-service lawn case and landscape

27   solutions" and its principal place of business in Waco, Texas.  (*Id.*) Defendant Meier is a Director

28   of Franchise Development.  Peterson began working with Defendants to establish a franchise

4

1  outlet in Central California in September 2021.  (*Id.* at 9) Peterson signed and entered an

2  agreement (Franchise Agreement) with Defendants on October 4, 2021, and assigned his rights to

3  Plaintiff Argus Capital on December 20, 2021.  (*Id.*)

4          The Franchise Agreement (Doc. 17-3, Ex. 1) contains a Dispute Resolution section with

5  the following Arbitration provision (*id.* at 29-31, "Dispute Resolution" section 11. D Arbitration):

> D. <u>Arbitration</u>.  If a court of competent jurisdiction determines that Section 14.I (Jury Waiver) and/or Section 14.J (No Class or Consolidated Actions) is invalid or unenforceable with respect to the Dispute, then and only then, notwithstanding any other provision of this Agreement to the contrary, the Dispute must be submitted to binding arbitration under the authority of the Federal Arbitration Act and must be determined by arbitration administered by the AAA pursuant to its then-current commercial arbitration rules and procedures. The arbitration must take place in McLennan County, Texas.  The arbitration must be conducted by a single arbitrator.  The arbitrator must follow the law and not disregard the terms of this Agreement.  The arbitrator must have at least five years of significant experience in franchise law.  The court shall decide the gateway issue arbitrability.  Any arbitration must be on an individual basis and the parties and the arbitrator will have no authority or power to proceed with any claim as a class action or otherwise to join or consolidate any claim with any other claim or any other proceeding involving third parties. If this limitation on joinder of or class action certification of claims within arbitration is held to be unenforceable, then this entire commitment to arbitrate shall become null and void and the parties shall submit all claims to the jurisdiction of the courts.  A judgment may be entered upon the arbitration award in any court of competent jurisdiction. The decision of the arbitrator will be final and binding on all parties to the dispute; however, the arbitrator may not under any circumstances: (1) stay the effectiveness of any pending termination of this Agreement; (2) except as provided in Section 14.K., assess punitive or exemplary damages; or (3) make any award which extends, modifies or suspends any lawful term of this Agreement or any reasonable standard of business performance that we set. Each party will bear its own costs and expenses for the arbitration and will be responsible to pay 50% of the arbitrator's fees and costs (including arbitrator's and AAA's fees and costs); provided that the prevailing party will be entitled to reimbursement of its fees and costs under Section 11.E.

(*Id.* at 30.)  The agreement also contains a "General Provision" section with the following choice of law provision:

> G. <u>Interpretation of Rights and Obligations</u>.  The following provisions apply to and govern the interpretation of this Agreement, the parties' rights under this Agreement, and the relationship between the parties:
> 1. <u>Applicable Law and Waiver</u>.  The parties agree that the execution of this Agreement and the acceptance of its terms occurred in the state of Texas.  The parties further agree that the performance of material obligations arising under the Agreement, including but not

limited to, your payment of monies due hereunder and the satisfaction of certain of our training requirements, shall occur in the state of Texas. Accordingly, subject to our rights under federal trademark laws and the parties' rights under the Federal Arbitration Act in accordance with Section 11, this Agreement, the parties' rights under this Agreement, and the relationship between the parties under this Agreement are governed by, and will be interpreted in accordance with, the laws (statutory and otherwise) of the state of Texas (excluding any conflicts of laws principles).

(*Id.* at 34-35, "General Provisions" section 14.G.1 "Applicable Law and Waiver".)  Also relevant to the pending matter are the following provisions:

I. <u>Jury Waiver</u>.  ALL PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN CONNECTION WITH THE ENFORCEMENT OR INTERPRETATION BY JUDICIAL PROCESS OF ANY PROVISION OF THIS AGREEMENT, AND IN CONNECTION WITH ALLEGATIONS OF STATE OR FEDERAL STATUTORY VIOLATIONS, FRAUD, MISREPRESENTATION OR SIMILAR CAUSES OF ACTION OR ANY LEGAL ACTION INITIATED FOR THE RECOVERY OF DAMAGES FOR BREACH OF THIS AGREEMENT AND CLAIMS ARISING OUT OF THE PARTIES' RELATIONSHIP.

(*Id.* at 36, "General Provisions", "14.I. Jury Waiver".)

J. <u>No Class or Consolidated Actions</u>.  ALL CLAIMS CONTROVERSIES AND DISPUTES MAY ONLY BE BROUGHT BY THE FRANCHISEE ON AN INDIVIDUAL BASIS AND MAY NOT BE COMBINED OR CONSOLIDATED WITH ANY CLAIM, CONTROVERSY OR DISPUTE FOR OR ON BEHALF OF ANY OTHER FRANCHISEE OR BE PURSUED AS PART OF A CLASS ACTION.

(*Id.* at 36, "General Provisions", 14.J. "No Class or Consolidated Actions".)

**B.  The Parties' Arguments**

Defendants request the Court to compel arbitration, arguing a "fully enforceable arbitration provision that provides in pertinent part that any dispute between Argus and TGG arising under, out of, in connection with or in relation to the Franchise Agreement must be submitted to binding arbitration to take place in McLennan County, Texas."  (Doc. 17 at 6.)  In arguing the enforceability of the arbitration provision, Defendants' assert Plaintiff's claims fall within the scope of the provision (*id.* at 14), and Texas law governs the validity and enforceability issues.  (*Id.* at 10-11.)  Specifically, Defendants contend Texas law deems the arbitration provision enforceable because the provision is neither procedurally nor substantially

6

1  unconscionable.  (*Id.* at 12-14.)  Notwithstanding this former contention, Defendants admit the

2  criteria and conditions necessary to effectuate the arbitration provision are not present and have

3  not been met.  Defendants assert "the arbitration provision does not apply unless 'a court of

4  competent jurisdiction determines that Section 14.1 (Jury Waiver) and/or Section 14.J (No Class

5  or Consolidated Actions) is invalid or unenforceable with respect to the Dispute'," therefore;

6  Defendants request "this Court [to] make such a finding with respect to the jury waiver

7  provision."  (*Id.* at 14-15.)  Moreover, contrary to Defendants previously asserting the Court must

8  uphold the Franchise Agreement express terms and apply Texas law as the choice of law

9  provision requires, Defendants contend Texas law does not govern the jury waiver issue because

10  "this Court sits in California" and "must apply California law."  (*Id.* at 15.)  Defendants also

11  assert "TGG reserves its right to contend that the jury trial waiver is valid and enforceable in all

12  jurisdictions located outside of California."  (*Id.* at 15, n. 3.)  Based on Defendants' request to

13  "reserve [] its right to contend [] the jury waiver is valid and enforceable . . . [;]" Defendants do

14  not dispute section 14.1 Jury Waiver is enforceable under Texas law.  (*Id.*)

15       Plaintiff opposes the motion arguing the following: (1) failure to meet and confer

16  (Doc. 20 at 7); and (2) the arbitration provision "binding arbitration in McLennan County Texas"

17  applies only if "a court of competent jurisdiction determines that Section 14.I Jury Waiver and/or

18  Section 14.J No Class or Consolidated Actions is invalid or unenforceable with respect to the

19  Dispute" and neither pre-condition has been met.  Plaintiff explains, "no challenge to the Jury

20  Waiver provision has been made [;] Plaintiff has not objected to the Jury Waiver provision, and

21  Defendants have not filed any motion to strike the jury request."  (*Id.* at 8.)  "Since Plaintiff is

22  amenable to waiving a trial by jury in this action, the issue is moot, and this case should proceed

23  without arbitration."  (*Id.*) Accordingly, "Plaintiff requests the Court to abstain from ruling on the

24  validity or enforceability of the Jury Waiver provision and deny the Motion."  (*Id.*)  Alternatively,

25  "in the event the Court finds it necessary to rule on the validity of the Jury Waiver provision,"

26  Plaintiff argues "federal procedural law on pre-dispute jury waivers applies," and under federal

27  procedural law, "the Jury Waiver provision is valid and enforceable." (*Id.* at 8-9.)  Plaintiff

28  contends Defendants' reliance on *Orange County* is misguided and the proper inquiry is whether

1  Texas law, not California law, is more protective than federal law.  (*Id.* at 9-10.)

2          In reply, Defendants maintain "a determination of the issue is necessary since it is

3  undisputed that Defendants are seeking to compel arbitration and the arbitration provision at issue

4  by its terms applies if the Court determines that the Jury Waiver provision is invalid or

5  unenforceable with respect to this dispute."  (Doc. 24 at 6.)  Moreover, "[t]here is no requirement

6  . . . Defendants first file a separate motion seeking a determination . . . as to the enforceability of

7  the jury waiver . . . before they can move to compel" and "[t]he Franchise Agreement does not

8  state [] the arbitration provision is inapplicable if the parties stipulate to waive a jury trial, nor

9  would such a stipulation have any bearing on the issue of whether or not the jury trial provision is

10  enforceable." (*Id.*)  Nevertheless, "[t]o the extent the Court is not inclined to compel arbitration,

11  TGG accepts [Plaintiff's] stipulation on the record, and also stipulates that it is willing to waive

12  jury trial should this matter proceed forward before this Court. Though the stipulation is

13  essentially moot. . ."  (*Id.* at 6, n.1)

14                          **LEGAL STANDARD**

15                              **DISCUSSION**

16  **A.  The Arbitration Provision: Pre-dispute Jury Waiver**

17          The parties do not dispute the conditions triggering binding arbitration under section 11. D

18  Arbitration have not been met.  Accordingly, Defendants "maintain that this Court must make

19  such a finding with respect to the jury waiver provision pursuant to controlling Ninth Circuit and

20  California law."  (Doc. 17 at 14-15.)  Defendants contend California law governs the validity of

21  the jury waiver provision and rely on *In re County of Orange*, 784 F.3d 520 (9th Cir. 2015)

22  arguing "this Court sits in California, [so] it must apply California law and find the jury waiver is

23  not enforceable." (*Id.* at 15.)  Plaintiff contends *County of Orange* is inapposite and

24  "distinguishable because the Franchise Agreement in the instant case contains a Texas choice of

25  law provision."  (Doc. 20 at 10.)  The Court agrees.  The apparent precedent *In re County of*

26  *Orange* is inapplicable and Defendants misunderstand the Ninth Circuit's rationale in reaching

27  the holding.

28          Contrary to Defendants' contention, the *Orange County* facts are distinguishable and

presented a narrow issue for the Ninth Circuit to determine: "whether a federal court sitting in diversity applies state or federal law to determine the validity of a pre-dispute jury trial waiver contained in a contract governed by California law." *In re Cnty. of Orange*, 784 F.3d at 523. The Ninth Circuit began its analysis by emphasizing "California and federal law treat [pre-dispute jury] waivers differently" and "the compatibility of these provisions, in an action based on California law but tried in federal court by reason of the parties' diverse citizenship implicates the *Erie* doctrine." *Id.* (cleaned up). However, "no Federal Rule of Civil Procedure or federal law governs pre-dispute jury trial waivers [;]" therefore, the Court applies "the 'relatively unguided' *Erie* analysis to answer the vertical choice of law question presented." *Id.* at 524. In doing so, the Court considered "whether the rules at issue are substantive or procedural" and "whether the application of federal rule would (1) be 'outcome determinative," (2) encourage "forum-shopping" between state and federal courts, or (3) lead to "inequitable administration of the laws." *Id.* at 527-28 (cleaned up) (*citing Hanna v. Plumer*, 380 U.S. 460, 468). The Court eventually reached its two-part holding and rule: "[F]ederal procedural law governs the validity of a pre-dispute jury trial waiver in federal court [;]" however, "when state law is more protective than federal law of the jury trial right [,]" federal procedural law does not govern, and federal courts must import state law to determine the validity of a pre-dispute jury trial waiver. *Id.* at 530-31. In other words, "federal courts sitting in diversity must apply the relevant state law to evaluate the validity of a pre-dispute jury trial waiver when that law is more protective than federal law." *Id.* at 531-32. The Ninth Circuit then applied the newly articulated rule to the facts explaining first, "the contract contains an unambiguous clause by which each party agrees to waive its right to a jury trial in any dispute arising out of the contract;" and "the contract [] contains a California choice of law clause." *Id.* at 524. Therefore, the parties' contract is governed by California law. *Id.* at 532. Next, the Court addressed the disparate jury waiver laws noting California and federal law treat pre-dispute jury waivers differently. *Id.* at 524. "Under California law, pre-dispute jury trial waivers are invalid unless expressly authorized by statute [;]" and "as a matter of public policy, [] a litigant cannot waive its right to a jury trial by entering into a contract that contains a pre-dispute jury trial waiver clause." *Id.* at 523, 532. Whereas

9

federal law, "permits such waivers as long as each party waived its rights knowingly and voluntarily." *Id.* at 532. California's rule is more protective of the right to a jury than the federal "knowing and voluntary" standard; therefore, the court must apply California's rule on pre-dispute jury trial waivers. *Id.* (quotations omitted). The Ninth Circuit did not find California law applicable because the district court sat in the state of California. The express unambiguous California choice of law clause required application of California law.

Finding *In re County of Orange* inapplicable, the Court turns to Defendants arguing California law, not Texas law, governs section 14.I Jury Waiver, the agreement's pre-dispute jury waiver provision. Defendants contend the Court must ignore the express Texas choice of law provision, which Defendants assert governs all disputes arising from the Franchise Agreement and apply California law in determining the validity of the pre-dispute jury waiver and find section 14.1 Jury Waiver unenforceable.

If the Court were to entertain Defendants' request, it would require the Court to ignore the express terms of the Franchise Agreement and apply California law only to find the jury waiver provision unenforceable in the state of California and effectuate the arbitration provision binding parties to arbitration in Texas. In Texas, Defendants would reassert the same arguments but argue Texas applies to all issues making the jury waiver provision enforceable. On the other hand, if the Court were to enforce the Franchise Agreement's choice of law provision and apply Texas law, the jury waiver provision would be found valid and enforceable. Seemingly, the outcome Defendants desire but in the alternate, more favorable forum. (*See* Doc. 24 at 7, Defendants assert "the parties agree that if the relevant state law is Texas law, the jury trial waiver is valid and enforceable, but if the relevant state law is California law, the jury trial waiver is invalid and unenforceable.") Notwithstanding the underlying contravening principle, Defendants' argument fails as a matter of law.

The parties do not dispute "the controlling case regarding whether the jury trial waiver is enforceable is the Ninth Circuit's [] *In re County of Orange*." (Doc. 24 at 7.) The dispute lies with the annunciated rule's applicability. Plaintiff contends Texas law applies under *County of Orange* because the Franchise Agreement contains a Texas choice of law provision, and

1   Defendants argue California law applies.  (*See generally* Doc. 21 at 9, *see also* Doc. 24 at 7.)  In

2   its Reply brief, Defendants assert Plaintiff "cites no authority to support its contention" and

3   applying Texas law is contrary to "traditional choice of law rules."  (Doc. 24 at 7.)  Defendants

4   also assert "the only case authority [it] has located rejects the argument advanced by [Plaintiff]."

5   (*Id.*)  Defendants cite *Migliore v. Dental Fix Rx, LLC,* 2016 WL 7655768 (C.D. Cal. 2016)

6   explaining "the district court held that California law applied to invalidate a jury trial waiver in a

7   franchise agreement, even though the agreement contained a Florida choice of law provision (and

8   the jury trial waiver would have been enforceable under Florida law)."  (*Id.*)

9          In *Migliore*, neither party sought to invoke the Florida choice of law provision contained

10  within the franchise agreement. *Migliore v. Dental Fix Rx, LLC*, No. CV1504257BROSSX, 2016

11  WL 7655768, at *5 (C.D. Cal. 2016).  Nevertheless, the court conducted an *In re County of

12  Orange* analysis to determine whether Florida's jury trial waiver rule, the choice of law state, is

13  more protective than federal law and found "Florida's jury trial waiver law is consistent with the

14  federal rule."  *Id.* at *4.  As a result of Florida and federal law treating jury waiver equally, the

15  court then determined whether to enforce the choice of law provision.  *Id.* ("Given that Florida's

16  jury trial waiver law is consistent with the federal rule, the Court must determine whether to

17  enforce the choice of law provision in the 2014 FA.").  The court explained,

18          If the Court enforces the choice of law provision, the Court must apply the federal
            "knowing and voluntary" rule to the jury trial waiver provision, as Florida's jury
19          trial waiver rule is not "more protective than federal law.  If, however, the Court
            does not enforce the provision [] the Court must apply California's rule on pre-
20          dispute jury trial waivers.

21  *Id.* (*citing In re County of Orange*, 784 F.3d at 532).  In determining whether to enforce the

22  parties' choice of law, the court applied California choice of law rules: enforcing the contractual

23  choice-of-law clause if the proponent establishes either: "the chosen state must bear some

24  substantial relationship to the parties or the contract, or there must be some other reasonable basis

25  for the parties' choice."  *Id.* (*citing Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 479

26  (Cal. 1992).)  If the proponent bears its burden under either of the tests, "the choice-of-law

27  provision will be enforced 'unless the other side can establish both that the chosen law is contrary

28  to a fundamental policy of California and that California has a materially greater interest in the

11

1    determination of the particular issue.'" *Id.* at *4. The district court noted "neither party seeks to

2    invoke the choice of law provision [;]" however, "[the defendant] is the party seeking to strike

3    Plaintiff's jury trial demand, . . . therefore the party which would benefit most from application of

4    the less onerous 'knowing and voluntary' test [and] the party bearing the burden." *Id.* at *5. The

5    court then determined the defendant "failed to carry its burden to establish that the Court should

6    enforce [the Florida choice of law clause];" therefore "the Court applies California's rule on pre-

7    dispute jury trial waivers." *Id.* Based on the Court's reading of *Migliore*, Defendants' assertion

8    is a misstatement of the court's rationale, and Defendants fail to provide relevant caselaw

9    supporting its contention. The Court acknowledges the defendants cite notable cases, but in

10   doing so, Defendants ignore the key role the choice of law provisions played in each court's

11   analysis.

12        In response to Defendants' research efforts asserting "the only case authority [] located

13   rejects the argument advanced by Argus [;]" (*see* Doc. 24 at 7) the Court disagrees for its research

14   efforts yield an additional, analogous case *U.S. Securities Holdings, Inc. v. Andrews*, No. CV 21-

15   2263 DSF (MRWX), 2021 WL 6104394 (C.D. Cal. 2021). In *U.S. Securities Holdings*, the

16   parties' agreement contained a New York choice of law clause, and the defendant argued

17   "California –rather than New York—law" applied to the jury waiver dispute "because

18   enforcement of the jury waiver would cause 'undue prejudice' to him as a resident of California

19   where the waiver would be unenforceable." *Id.* at *3. The defendant did not dispute the validity

20   of the "governing law provision" but contended that California law should apply "because

21   California grants greater constitutional protection for the Seventh Amendment right to a jury."

22   *Id.* "In other words, the Court should ignore the express New York choice of law provision

23   because, under New York law, a predispute contractual jury waiver is permitted, but it is a

24   'violation of [California's] public policy.'" Likewise, the defendant cited *In re County of Orange*

25   as supporting its contention. *Id.* at *4. The court explained, "[b]ecause there is a conflict of laws

26   between California and New York with respect to jury waivers, the Court must engage in a choice

27   of law analysis." *Id.* at *3. Before concluding New York law applied, the court found *County of*

28   *Orange* inapplicable and "inapposite because in that case, the court sitting in diversity applied

1    California law to the jury waiver dispute because the parties' contract 'was governed by

2    California law'." *Id.* at *4. Moreover, "[the defendant] cannot rely on a violation of California

3    public policy; he must identify a *New York public policy* that would be violated by enforcement

4    of the choice of law provision." *Id.*

5         Defendants' argument mirrors the *U.S. Securities Holdings* defendant. Likewise,

6    Defendants do not dispute the validity of the Franchise Agreement's "Interpretation of Rights and

7    Obligations" and "Applicable Law and Waiver" provisions establishing Texas as the governing

8    law, but Defendants contend California—not Texas law—should apply to the interpretation of the

9    jury waiver provision because California is more protective. For the reasons annunciated, the

10   Court finds Defendants' argument unpersuasive. Moreover, Defendants misconstrue the federal

11   rule regarding pre-dispute jury waiver and ignores the key role choice of law provisions play in

12   the Court's analysis. The Franchise Agreement contains a choice of law provision, but it provides

13   Texas law, not California will govern. Defendants fail to carry its burden because it does not

14   argue Texas law, which is the relevant state law under *In re County of Orange* and *Migliore,* is

15   more protective of the right to a jury trial than federal law. Though the Court agrees with

16   Defendants' premise "federal courts sitting in diversity must apply the relevant state law to

17   evaluate the validity of a pre-dispute jury trial waiver when that law is more protective than

18   federal law" (*see* Doc. 24 at 7 (citing *In re County of Orange*, 784 F.320 at 531-32) and "the law

19   selected by the parties governs questions of enforceability so long as it is more protective of the

20   right to a jury than federal law," Defendants fail to show why California law should apply. *See*

21   *also Cent. 21 Real Est. LLC v. All Prof. Realty, Inc.*, No. 2:10-2751 WBS GGH, 2012 WL

22   2682761, at *3 (E.D. Cal. 2012). Despite the contrary finding, the Court still agrees California

23   conflict-of-law rules apply and proceeds with the analysis.

24         a.   Validity of Section 14.I Jury Waiver

25              i.   *Legal Standard*

26         "Federal procedural law governs the validity of a pre-dispute jury waiver in federal court."

27   *In re Cnty. of Orange*, 784 F.3d at 531. However, the federal "knowing and voluntary" standard

28   is a federal constitutional minimum; therefore, it is inapplicable where state law is more

1    protective than federal law of the jury trial right.  *Id.* (quotation marks omitted).  In such cases,

2    there is no federal rule that governs the validity of a pre-dispute jury trial waiver.  *Id.* (cleaned

3    up).  Instead, "*Erie's* federalism principle directs [the Court] to import state law as the federal

4    rule."  *Id.*  "This means that federal courts sitting in diversity must apply the relevant state law to

5    evaluate the validity of a pre-dispute jury trial waiver **when that law is more protective than**

6    **federal law**."  *Id.* at 531-32 (emphasis added).  Therefore, as Plaintiff correct asserts "if Texas

7    law is more protective than federal law, the Court should apply Texas law in determining the

8    validity of the Jury Waiver provision.  If not, then the federal "knowingly and voluntarily"

9    standard is applied."  (Doc. 21 at 10.)

10          The Franchise Agreement contains the following choice of law provision:

11          G. Interpretation of Rights and Obligations.  The following provisions apply to
            and govern the interpretation of this Agreement, the parties' rights under this
12          Agreement, and the relationship between the parties: . . .1. Applicable Law and
            Waiver.  The parties agree that the execution of this Agreement and the
13          acceptance of its terms occurred in the state of Texas. . . ..

14    (*See* Doc. 17-3, Ex. 1, at 34-35, "General Provisions" section 14.G.1 "Applicable Law and

15    Waiver.")  The jury waiver provision, section 14.I Jury Waiver, reads

16          ALL PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY
            JURY   IN   CONNECTION   WITH   THE   ENFORCEMENT   OR
17          INTERPRETATION BY JUDICIAL PROCESS OF ANY PROVISION OF
            THIS AGREEMENT, AND IN CONNECTION WITH ALLEGATIONS OF
18          STATE   OR   FEDERAL   STATUTORY   VIOLATIONS,   FRAUD,
            MISREPRESENTATION OR SIMILAR CAUSES OF ACTION OR ANY
19          LEGAL ACTION INITIATED FOR THE RECOVERY OF DAMAGES FOR
            BREACH OF THIS AGREEMENT AND CLAIMS ARISING OUT OF THE
20          PARTIES' RELATIONSHIP.

21    (*Id.* at 36, "General Provisions", "14.I. Jury Waiver".)  Accordingly, the parties' Franchise

22    Agreement is governed by Texas law.  As previously stated, the parties do not dispute Texas law

23    holds the jury waiver provision enforceable, but the Court discusses the analysis for efficiency

24    and clarity.  Texas law holds pre-lawsuit jury waiver provisions enforceable if waiver is

25    "voluntary, knowing, and intelligent, with full awareness of the legal consequences."  (See Doc.

26    21 at 10 (*citing In re The Prudential Ins. Co. of America*, 148 S.W.3d 124 (2004).)  This rule is

27    not more protective of the right to a jury trial than the federal "knowing and voluntary" standard.

28    *Id.* at 532.  Therefore, federal procedural law governs the validity of section 14.I Jury Waiver, and

14

the Court applies the "knowingly and voluntarily" standard. *See In re Cnty. of Orange*, 784 F.3d at 531. Plaintiff does not dispute jury waiver and asserts it knowingly and voluntarily waived its right to a jury trial. Accordingly, the Court finds section 14.I Jury Waiver valid and enforceable under federal procedural law and agrees with Plaintiff, absent a contrary showing, "the precondition to compel arbitration in Texas cannot be met." (Doc. 21 at 11.)

### B. The Arbitration Provision: Validity and Enforceability

Defendants contend Texas law governs the arbitration provision and any issues regarding validity and enforceability. Accordingly, under Texas law, section 11.D Arbitration is valid and enforceable because Plaintiff "cannot meet its burden of showing [] the arbitration provision is [both] procedurally and substantively unconscionable." (Doc. 17 at 12-13.) Specifically, Defendants assert Plaintiff fails to show "any oppression and unfairness" that "tainted the negotiation process leading to the Franchise Agreement's formation" and cannot show the arbitration provision is "so one-sided that it is unconscionable under the circumstances existing when the parties made the contract one-sided." (*Id.*) Plaintiff contend California law governs the issues of unconscionability, and under California law, the arbitration provision is procedurally and substantially unconscionable. (*See generally* Doc. 21 at 11-12.)

a. <u>Section 11.D Arbitration</u>

In relevant parts, section 11.D Arbitration provides,

> If a court of competent jurisdiction determines that Section 14.I (Jury Waiver) and/or Section 14.J (No Class or Consolidated Actions) is invalid or unenforceable with respect to the Dispute, then and only then, notwithstanding any other provision of this Agreement to the contrary, the Dispute must be submitted to binding arbitration under the authority of the Federal Arbitration Act and must be determined by arbitration administered by the AAA pursuant to its then-current commercial arbitration rules and procedures. The arbitration must take place in McLennan County, Texas…

(Doc. 17-3, Ex. 1, at 30.) The arbitration provision plainly and expressly establishes two criteria or conditions must be present to effectuate "binding arbitration under the authority of the Federal Arbitration Act . . . in McLennan County, Texas," "a court of competent jurisdiction [must] determine [] Section 14.I (Jury Waiver) and/or Section 14.J (No Class or Consolidated Actions) is invalid or unenforceable . . . then and only then . . . the Dispute must be submitted to binding

arbitration." (*Id.*)  The Court previously found section 14.I Jury Waiver valid and enforceable "with respect to the Dispute" and the validity of section 14.J No Class or Consolidated Action is not before the Court.  Therefore, the criteria required to trigger the arbitration provision is not present.  For this reason, the Court need not address the parties' arguments or any related issues regarding the validity and enforceability of the arbitration provision, section 11.D Arbitration.

**CONCLUSION**

For reasons thoroughly discussed, the Court finds the Franchise Agreement's jury waiver provision, section14.I Jury Waiver, valid and enforceable under federal procedural law.  Having found the pre-dispute jury waiver enforceable, the Court also finds the express criteria and/or conditions required to trigger Franchise Agreement's arbitration provision, section 11.D Arbitration, are absent and have not been met.  In addition, the Court's Order addresses only the validity of the pre-dispute jury waiver provision, section 14.I Jury Waiver, and whether federal procedural law or state law governs the determination.  The Court's ruling is limited to pre-dispute jury waiver and does not extend to any issue regarding the arbitration provision, section 11.D Arbitration, or any related argument raised by the parties.  Though unconscionability arguments were initially before the Court, the assessment and determination were unwarranted and essentially moot after finding the criteria triggering section 11.D Arbitration were not met.  The Court hereby **DENIES** Defendants' motion to compel arbitration (Doc. 17).

IT IS SO ORDERED.

Dated:  __April 9, 2025__

UNITED STATES DISTRICT JUDGE